IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JOSEPH GREGOR, et al.,

        Plaintiffs,

v.                                     CIVIL ACTION NO.   2:20-cv-00654

WEST VIRGINIA SECONDARY SCHOOLS
ACTIVITIES COMMISSION, et al.,

        Defendants.

MEMORANDUM OPINION AND ORDER

      Pending before the court is Plaintiffs' Motion for a Temporary Restraining Order, a Preliminary Injunction, and Declaratory Relief. [ECF No. 5]. Plaintiffs filed this motion on October 7, 2020. As of October 8, 2020, Defendants have not been served. As Defendants have not yet been served, I can only dispose of the Temporary Restraining Order. The matters of the Preliminary Injunction and Declaratory Relief will be set for a hearing once Defendants have been served with process. Having reviewed the Plaintiffs' Complaint, Motion, memorandum of law, attached affidavit, and other exhibits, I find that a hearing is not necessary to make a decision on the Temporary Restraining Order and will dispose of it now. For the following reasons, Plaintiffs' Motion for a Temporary Restraining Order is **DENIED**.

      Plaintiff Joseph Gregor filed this suit on behalf of his minor daughter, Plaintiff Anna Gregor, who is a high school junior, and by all accounts, an accomplished athlete. After practicing with the Sissonville High School boys' soccer team over the summer and being invited to join the boys' soccer team by that team's coach, school

officials forbade her from joining the team or even practicing with them. [ECF No. 1, at ¶¶ 13–44]. Plaintiff Anna had hoped to join the boys' soccer team to compete at a different level than the girls' soccer team and because she believed it would better prepare her for college soccer. *Id.*

Plaintiffs bring five different claims against Defendants West Virginia Secondary School Activities Commission and the West Virginia Board of Education. Plaintiff alleges violations of her rights under the Fourteenth Amendment to the United States Constitution, [ECF No. 1, at ¶¶45–47]; the Equal Protection principles of the West Virginia Constitution, *id.* at ¶¶ 48–51; the West Virginia Human Rights Act, *id.* at ¶¶ 52–57; Title IX of the Education Amendments of 1972, *id.* at ¶¶ 56–59; and unlawful retaliation in violation of Title IX, *id.* at ¶¶ 60–62.

Plaintiffs' filings are unclear as to whether she is seeking an ex parte Temporary Restraining Order without notice to Defendants. If she is, she would be subject to the stricter standards of Rule 65(b). *Fed. R. Civ. P.* 65(b). Because I find that her request for a Temporary Restraining Order, at this point, fails on the merits, I do not address whether Plaintiffs have met the heightened standards required by Rule 65(b).

The purpose of a Temporary Restraining Order is to preserve the status quo and prevent irreparable harm that would occur between the time of requesting the Temporary Restraining Order until the matter of a Preliminary Injunction can be decided by the court after either briefing and/or a hearing with both parties. The burden to meet these factors rests solely on the plaintiff.

The decision to issue or deny a Temporary Restraining Order is committed to the sound discretion of the trial court. *See Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). The standard for granting a Temporary Restraining Order is identical to

the standard for granting a preliminary injunction. *See Moore v. Kemthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006). The United States Supreme Court and the United States Court of Appeals for the Fourth Circuit have provided district courts with a precise analytical framework for determining whether to grant preliminary relief. First, the plaintiff must make a clear showing that it will likely succeed on the merits. Second, the plaintiff must make a clear showing that they are likely to be irreparably harmed absent preliminary relief. Third, the plaintiff must show that the balance of equities tips in their favor. Finally, the plaintiff must show that an injunction is in the public interest. All four requirements must be satisfied. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371 (2010).

### I.     Likelihood of Success on the Merits

The most common standard for measuring whether the movant has demonstrated a likelihood of success on the merits is whether the movant has demonstrated a reasonable probability of success. *Fed. Practice and Procedure (Wright & Miller)* § 2948.3. I will first lay out the standard for each of Plaintiffs' five claims and then address their likelihood of success based on the arguments presented in Plaintiffs' memorandum of law.

A claim for a violation of Plaintiffs' rights under the Fourteenth Amendment to the United States' Constitution must show that the gender classification in question does not further an important government interest and that the classification is not substantially related to that interest. *H.B. Rowe Co. v. Tippett*, 615 F.3d 233, 242 (4th Cir. 2010). The Supreme Court of Appeals of West Virginia

has found that gender discrimination claims brought under the West Virginia Constitution and the West Virginia Human Rights Act must meet that same standard. *Israel by Israel v. W. Va. Secondary Schs. Activities Comm'n*, 388 S.E.2d 480, 487, 490 (W. Va. 1989).

Plaintiffs' Title IX claim asserts that Defendants actions violate 34 C.F.R. § 106.41(a)-(b). These sections read as follows:

> (a) General. No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient, and no recipient shall provide any athletics separately on such basis.
>
> (b) Separate teams. Notwithstanding the requirements of paragraph (a) of this section, a recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport. However, where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities have previously been limited, members of the excluded sex must be allowed to try out for the team offered unless the sport involved is a contact sport. For purposes of this part, contact sports include boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose or major activity of which involves bodily contact.

34 C.F.R. § 106.41(a)-(b).

Plaintiffs' retaliation claim requires a showing that Plaintiff engaged in a protected activity, she was thereafter subjected to an adverse action, and that a causal link exists between the protected activity and the adverse action. *Atkinson v. Lafayette Coll.*, 653 F.Supp.2d 581 (E.D. Pa. 2009); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184 (2005).

Here, Plaintiffs assert that they will clearly succeed on the merits of the Equal Protection and Title IX claims based on their reading of the *Israel*[1] case and the *Mercer*[2] case. But these two cases are too dissimilar from the facts in this case to

---

[1] *Israel by Israel v. W. Va. Secondary Schs. Activities Comm'n*, 388 S.E.2d 480 (W. Va. 1989)
[2] *Mercer v. Duke Univ.*, 190 F.3d 643 (4th Cir. 1999)

adequately demonstrate a likelihood of success on the merits. The crucial difference being that, in Ms. Gregor's case, Sissonville High School does offer a girls' soccer team.

In *Israel*, the Supreme Court of Appeals of West Virginia examined the differences between baseball and softball to determine whether a female high school student should be permitted to compete for a spot on the, at that time, all boys baseball team. 388 S.E.2d 480 (W. Va. 1989). The court's analysis primarily turned on whether baseball and softball were similar enough sports to justify softball as an alternative activity for female high school athletes when they were disallowed from trying out for the baseball team. *Id.* at 485–486. After examining the rules, the equipment, the field, and the "intangibles" associated with playing baseball, the court found that the plaintiff must be permitted to try out for the baseball team because baseball and softball are different sports. *Id.* Even a cursory reading of *Israel* clarifies that it does not directly apply in this situation because the sport played by the girls' soccer team and the boys' soccer team at Sissonville High School are the same.

In *Mercer*, the Fourth Circuit addressed the regulations associated with Title IX and how they applied to a woman who had been offered a spot on the Duke University Football Team but then was later disallowed from competing because of she was a woman. 190 F.3d 643 (4th Cir. 1999). There, it was critical that football was only offered to members of one sex and not the other. *Id.* at 646. Because Sissonville High School offers both a boys' soccer team and a girls' soccer team, *Mercer* is not dispositive.

I am, of course, neither deciding on the merits of this case nor saying that the *Israel* and/or *Mercer* are completely inapplicable to the facts in this case. These two cases may very well inform my decision on a preliminary injunction and, ultimately,

on the merits. But at this point, Plaintiffs' reliance on them fails to demonstrate a likelihood of success on the merits.

Because Plaintiffs fail to demonstrate a likelihood of success on the merits, they are not entitled to a Temporary Restraining Order. Therefore, I only briefly address the remaining factors below.

## II. Irreparable Harm

Despite Plaintiffs alleging five different claims in this case, the injury associated with each is the same: not being able to play on or practice with the boys' soccer season. Therefore, I only need to address this one injury rather than five separate injuries.

Plaintiffs argue that Ms. Gregor will be irreparably harmed by not being permitted to play on the Sissonville High School boys' soccer team because she will be missing out on the chance to further develop her skills and because it will harm her chances of being recruited to play college soccer. Courts are divided over whether not being able to participate in athletics constitutes irreparable harm. But most courts seem to lean toward the harm being irreparable only when the person cannot participate in the sport at all. *Reed v. Nebraska School Activities Assoc.*, 341 F. Supp. 258 (D. Neb. 1972) (finding irreparable harm when a girl would not be able to play golf at all if not permitted to play on the boys' golf team); *D.M. by Bao Xing v. Minnesota State High School League*, 917 F.3d 994, 1003 (8th Cir. 2019) (finding irreparable harm when boys would have no school dance team to compete on if not permitted to join the girls' dance team). Other courts have found that students are not irreparably harmed even when the student is barred from competition for an entire season. *See e.g. A.M. v. Penn. Interscholastic Athletic Assoc., Inc.*, No. 1:20-CV-290-SPB, 2020 WL 5877617, at *4 (W.D. Pa. Oct. 1, 2020).

Here, Plaintiffs have not demonstrated any irreparable harm that will occur between now and the time a hearing could be heard on a preliminary injunction. While Ms. Gregor is not being permitted to compete or practice with the boys' team, this does not mean she is being denied the opportunity to compete in soccer at all. Ms. Gregor had the opportunity to play for the girls' team, as she did during her freshman and sophomore years of high school. Even if she does not wish to pursue this option there are other soccer opportunities available to her. In fact, based on Plaintiffs' complaint, Ms. Gregor did not even intend to compete for either the boys' or the girls' high school soccer team at all this year before being invited to join the boys' team, clearly implying there were paths to further developing her skills outside of interscholastic athletics. Though I recognize that a high school athlete's ability to compete can affect recruitment for college athletics, Plaintiffs have not demonstrated why she cannot wait to make this argument at a preliminary injunction hearing.

### III.   Balancing the Equities and the Public Interest

These two factors are almost completely absent from Plaintiffs' request for a Temporary Restraining Order. Plaintiffs merely state that these two factors cut in her favor. [ECF No. 5, at 7]. At this point, this is insufficient to support a finding for preliminary relief.

### IV.   Conclusion

For the above reasons, Plaintiffs' request for a Temporary Restraining Order is **DENIED**. Once Defendants have been served, I will schedule briefing and a hearing for a preliminary injunction and the matter of a declaratory relief.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 9, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE